IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES WILLIAM JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE. NO. 1:23-cv-433-ECM |
| ) | [WO] |
| TOWN OF PINCKARD, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

On June 14, 2023, Plaintiff James William Johnson filed this action in Alabama state court after various altercations with local police officers led to his arrest and prosecution. In addition to bringing a variety of state law claims, he alleges, pursuant to § 1983, that his constitutional rights were violated.

Now pending before the Court is a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendants Town of Pinckard (the "Town"), the Pinckard Police Department ("PPD"), and Adam Bruhn (collectively, the "Defendants"). (Doc. 4). The motion is fully briefed and ripe for review. Upon consideration of the motion, and for the reasons that follow, the Court concludes that the motion to dismiss (doc. 4) is due to be granted.

**II. JURISDICTION**

The Court has subject matter jurisdiction over the federal law claims in this proceeding pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law

claims pursuant to 28 U.S.C. § 1367. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

### III. LEGAL STANDARD[1]

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and

---

[1] The Plaintiff cites to the "no set of facts" standard (doc. 13 at 1) which has been abrogated. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

2

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## IV. FACTS[2]

Pinckard is a small town located in Dale County, Alabama, on a stretch of highway between two larger cities, Dothan and Ozark. On August 18, 2019, Plaintiff James William Johnson ("Johnson"), a resident of Pinckard, drove to the PPD after discovering that his son was suspected of stealing a lawn mower. Johnson's son had already walked to the PPD to discuss the allegations with an officer.

When Johnson arrived, he found his son speaking with the officer on duty, Officer Adam Bruhn. According to Johnson, Officer Bruhn's questions implied that Johnson's son was guilty as the officer pressed his son for answers. Johnson, who found the accusations to be false, was told to leave Officer Bruhn's office while the questioning continued. Johnson did not leave, informing Officer Bruhn that "he had a right to stay with his son." (Doc. 1-1 at 3). Officer Bruhn then stood from his desk, at which point Johnson rose and began walking to the door. Before Johnson could reach the exit, Officer Bruhn pushed Johnson, who raised his right hand to push Officer Bruhn away from himself.

Seeing this action by Johnson, Officer Bruhn grabbed Johnson by the neck and used both hands to shove him into the office wall. Johnson pulled Officer Bruhn's hands away from his neck and voiced his displeasure, after which Johnson opened the office door and

---

[2] This recitation of the facts is based on Johnson's complaint (doc. 1-1). The Court recites only the facts pertinent to resolving the Defendants' motion to dismiss. For purposes of ruling on the motion, the facts alleged in the complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to Johnson.

told his son to leave because the "officer was crazy." (*Id.*). Officer Bruhn told Johnson that he was going to jail for his actions. Johnson responded that he was wrongfully attacked and again informed his son to leave. Officer Bruhn threatened to tase Johnson, who got into his truck to drive away. Johnson's son walked to a friend's house.

Upon leaving, Johnson drove to his house, parked in his backyard, and took a seat in a chair. Officer Bruhn followed suit, parking at Johnson's house and knocking on his back door. When Johnson asked what Officer Bruhn what he was doing, Officer Bruhn told Johnson that "he was going to jail."[3]

Two weeks later, on September 1, 2019, two PPD officers arrived at Johnson's house: Chief Lowell Williams and Officer Justin Bright. Chief Williams held a folded piece of paper in his hand, which he claimed to be a warrant for Johnson's arrest for obstruction stemming from the altercation at the police department. Chief Williams did not show the paper to Johnson before Officer Bright reached out to arrest him, at which point Johnson ran away.

Later that afternoon, Johnson attempted to turn himself in at the Dale County Jail (the "Jail"). However, those at the Jail did not have a warrant for his arrest and were unsure how to obtain copies of the PPD's alleged warrant. The Jail contacted PPD, who informed the officers at the Jail that the warrant would be delivered soon. After approximately an hour, despite the continued absence of the warrant, a Dale County Deputy took Johnson

---

[3] The complaint does not specify how this interaction ends before moving on to Johnson's next interaction with the PPD.

back to process. Some thirty minutes later, Chief Williams arrived and processed Johnson's court summons before Johnson was released on bond.

On May 3, 2022, Johnson was found not guilty of obstructing governmental operations, disorderly conduct, resisting arrest, and attempting to elude. He filed this action thirteen months later on June 14, 2023, in the Circuit Court of Dale County. Subsequently, the Defendants removed the action here (doc. 1) and moved to dismiss the complaint in full (doc. 4).

## V.  DISCUSSION

Johnson's complaint contains fourteen counts, the vast majority of which derive from state law. He sues multiple defendants, namely the Town of Pinckard, the Pinckard Police Department, Officer Adam Bruhn, and Fictitious Defendants A through H. As analyzed below, Johnson fails to state a federal claim upon which relief can be granted.

### A.  Official Capacity Claims

As an initial matter, Johnson's complaint lacks clarity, is hard to follow, and seemingly contradicts itself multiple times. Meanwhile, his response brief (doc. 13) does little, if anything, to elucidate his complaint. Indeed, Johnson does not state whether he asserts his claims against Officer Bruhn in his individual or official capacity. However, because Johnson names the Town as a defendant, any official capacity claims against Officer Bruhn are redundant and therefore due to be dismissed with prejudice. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991); *see also Tippins v. City of Dadeville*,

5

2014 WL 1092920, at *5 (M.D. Ala. 2014) (dismissing state law claims against defendants in their official capacities as redundant of claims against city).[4]

### B. Fictitious Parties

The Defendants also move to dismiss Fictitious Defendants A through H. "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam). The Eleventh Circuit recognizes an exception to this rule "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)) (internal quotations omitted). In other words, "real parties sued under a fictitious name" satisfy the exception, while simply "suing fictitious parties" does not. *Dean*, 951 F.2d at 1215 (holding that a fictitious party plead as "Chief Deputy of the Jefferson County Jail John Doe" was described with sufficient clarity to allow service of process on the "Chief").

Here, Johnson labels Defendants A through H as "fictitiously named defendant[s] whose names are presently unknown to the Plaintiff and who are liable for damages owed to Plaintiff." (Doc. 1-1 at 2). Johnson represents that he "will add those defendants by amendment once their identities are known." *Id.* Johnson's description does not satisfy the Eleventh Circuit's requirement of providing a sufficient level of specificity, nor does it provide an adequate description to allow for service of process. On this record, Johnson is not suing real parties under a fictitious name; he is suing fictitious parties, as is evidenced

---

[4] The Court here, and elsewhere in the opinion, cites to non-binding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

by a lack of factual allegations relating to Defendants A through H. Accordingly, the fictitious parties are due to be dismissed with prejudice.

### C. The Police Department

Next, the Defendants move to dismiss the PPD because it is not a suable entity. "[C]apacity to sue or be sued shall be determined by the law of the state in which the district court is held." *Dean*, 951 F.2d at 1214 (citing FED. R. CIV. P. 17(b)). Under Alabama law, a police department lacks the capacity to be sued. *See Ex parte Dixon*, 55 So. 3d 1171, 1172 (Ala. 2010); *see also Rogers v. Howell*, 2020 WL 520993, at *2 (M.D. Ala. Jan. 7, 2020), *report and recommendation adopted*, 2020 WL 522018 (M.D. Ala. Jan. 31, 2020) (finding that the Dothan Police Department is not a legal entity subject to suit); *Johnson v. Andalusia Police Dept.*, 633 F. Supp. 2d 1289, 1301 (M.D. Ala. 2009) (finding the same about the Andalusia Police Department). Johnson does not argue otherwise in his response to the Defendants' motion to dismiss. (*See generally* doc. 13). Therefore, the PPD is due to be dismissed with prejudice.

### D. Federal Claims

Johnson is also unclear about what federal claims he brings. Count One is titled "42 U.S.C. 1983 – Deprivation of Constitutional Rights." (Doc. 1-1 at 4). In this count, Johnson alleges that the "Defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, deprived the Plaintiff of his right of life, liberty, and property afforded him by the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. § 1983." (*Id.*). Johnson continues by alleging that Bruhn "executed a false and defamatory sworn deposition leading to the arrest and prosecution of" him. *Id.* Finally, in Count One,

Johnson claims that the "PPD, acting under Defendant Town [of Pinckard], accepted and approved the actions of Bruhn in contributing to the violation of Plaintiff's Fourth Amendment Rights." (*Id.*).

Meanwhile, Count Two is titled "Malicious Prosecution." (*Id.* at 5). Therein, Johnson does not reference § 1983 or any constitutional amendments while alleging that he suffered "shame, humiliation, mental distress, and injury and damage to his reputation" as a result of false charges against him. (*Id.*).

In their brief in support of the motion to dismiss, the Defendants interpreted "Count One to assert a Fourth Amendment malicious prosecution claim against state actors through the Fourteenth Amendment," (doc. 5 at 12),[5] and Count Two to assert "a state law claim for malicious prosecution against Officer Bruhn and the Town," (*id.* at 19). In doing so, the Defendants rely in part on *Harris v. City of Ozark*, a prior case in which this Court construed strikingly similar language in a complaint (by Johnson's counsel) as a federal malicious prosecution claim under the Fourth Amendment. 2022 WL 37017, at *2 (M.D. Ala. 2022).

The Defendants' interpretation of Johnson's first two counts shifts in their reply brief, and understandably so: Johnson, in his response brief, appears to claim that Count One is a Fourteenth Amendment due process claim and Count Two is a federal law malicious prosecution claim. (*See generally* doc. 13). In referencing Count One, Johnson quotes the language of § 1983 before stating that the Fourteenth Amendment "assures

---

[5] The Court utilizes the page numbers generated by the CM/ECF system.

procedural fairness and covers a substantive sphere as well." (*Id.* at 7). He then turns to Count Two and block-quotes two *federal* cases, each of which speaks to a federal law malicious prosecution claim. To the Defendants' (and the Court's) dismay, Johnson includes no legal analysis following his block-quoted paragraphs, leaving those reading his complaint to guess as to what he is arguing. (*Id.* at 6–8).

After considerable effort to interpret Johnson's submissions, the Court construes together Count One and Count Two of the complaint as bringing a single § 1983 claim for malicious prosecution and does so for two reasons. First, the plain language of Count One supports it. In Count One, Johnson invokes both the Fourth and Fourteenth Amendments. His Fourth Amendment references are easily understood: Officer Bruhn and the PPD allegedly violated his Fourth Amendment rights by maliciously arresting and prosecuting him. His Fourteenth Amendment allegations, on the other hand, are unclear or nonexistent.[6] Johnson's sole reference to the Fourteenth Amendment rests in his statement claiming a deprivation of "life, liberty, and property as afforded him by the Fourteenth Amendment." (Doc. 1-1 at 4).

Even construing Johnson's invocation of the Fourteenth Amendment liberally, he fails to plead a due process claim because he alleges nothing further. Despite serving as the master of his complaint, Johnson's first count remains devoid of reference to something more tangible than "life, liberty, and property." (*Id.*); *see also Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("we have long recognized, plaintiffs are 'the master

---

[6] The Defendants construed this lack of clarity in the complaint as Johnson's attempt to assert a Fourth Amendment claim against a state actor through the Fourteenth Amendment. (*See* doc. 5 at 12).

of the complaint[.]'"). The complaint does not allege a specific violation of any due process right, nor is there a "substantive due process right to be free from malicious prosecution" because "[a] malicious prosecution claim arises under the Fourth Amendment, not Fourteenth Amendment substantive due process." *Rehberg v. Paulk*, 611 F.3d 828, 853 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012).

Second, Johnson's representations of the nature of Count Two, as referenced in his response brief, suggest that it should be construed as a federal claim. Count Two lacks a citation to any constitutional provisions, but rather adopts "the averments contained in the preceding paragraphs" and essentially repeats the allegations against Officer Bruhn (*i.e.*, that the officer maliciously caused Johnson's prosecution). (Doc. 1-1 at 5). Although Johnson is not free to amend his complaint through his response brief, his claims are not bound to the interpretations provided by the Defendants in their motion to dismiss. In his brief, Johnson *appears* to contend that Count Two is grounded in federal law. (Doc. 13 at 7) (quoting a nonbinding case for the proposition that federal, not state, law determines whether a § 1983 malicious prosecution claim has been stated). Rather than expound on the pleading of his second count or why he opted for this specific, nonauthoritative case, Johnson chooses to forgo any further discussion and analysis, leaving the Defendants and the Court in the dark about his complaint and his intentions. Therefore, because Count One already asserts a federal law claim for malicious prosecution, Count Two is construed in tandem, and the Court will analyze both counts as one claim.

### *1. Officer Bruhn*

Johnson alleges that Officer Bruhn lied in a sworn deposition, leading to his eventual arrest and prosecution in violation of the Fourth Amendment.[7] Officer Bruhn argues that he is entitled to qualified immunity.[8]

Government officials sued in their individual capacities are protected by qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). The defense of qualified immunity protects officers "from undue influence with their duties and from potentially disabling threats of liability." *Id.* at 806. Qualified immunity analysis has two components: it offers protection when officials are "performing discretionary functions" and when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. "When properly applied, [qualified immunity] protects 'all but the

---

[7] The Court notes that Johnson, at points, appears to contend that no warrant existed. (Doc. 1-1 at 3–4) (discussing how Johnson was never shown the warrant and how he was processed "without any warrants."). This would contradict his claim for malicious prosecution pursuant to an allegedly defective warrant based on Officer Bruhn's misrepresentations and, instead, would give rise to a claim for false arrest. However, for reasons detailed in the section above, the Court looks past Johnson's contradictions and, in an attempt to interpret his complaint as consistently as possible, views his allegations as asserting a claim for malicious prosecution.

[8] Despite the Defendants' arguments on qualified immunity (almost seven pages of briefing), Johnson fails to respond with substance, electing instead to point to Alabama state law to vaguely assert that immunity should not be given on a motion to dismiss. (*See id.* at 3–4) (quoting two federal cases and an Alabama Supreme Court case, each of which discuss state agent immunity at the motion to dismiss stage). Obviously, this is wrong. Yet, federal law is of no further help to Johnson because "[u]nless [Johnson's] allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted).

First, the Court turns to the discretionary function inquiry. Johnson argues that Officer Bruhn violated his rights by allegedly lying in sworn statements, "thus [he] was not performing [a] discretionary function." (Doc. 13 at 3). This logic twists the analysis. "The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Nor is the inquiry whether the alleged act was "committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Instead, the Court "look[s] to the general nature of the defendant's action" and considers whether the defendant's action "*in general* [was] a part of his job-related powers and responsibilities." *Id.* Here, "making arrests and swearing out warrants [were] within the general scope of [Officer Bruhn's] duties," and thus, he was performing a discretionary function of his job. *See Byrd v. Jones*, 2015 WL 2194697, at \*9 (N.D. Ala. 2015), *aff'd*, 673 F. App'x 968 (11th Cir. 2016).

Next, the Court asks whether the complaint has sufficiently alleged a violation of a federal statutory or constitutional right, and whether the unlawfulness of the defendant's conduct was clearly established at the time. *See Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020). This is a two-pronged inquiry, and the Court may analyze the two prongs in any order. *See Bradley v. Benton*, 10 F.4th 1232, 1238 (11th Cir. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

12

The Court's analysis begins and ends with the first prong: violation of a federal right. Johnson brings a federal malicious prosecution claim, meaning he must allege facts that would show "(1) that [Officer Bruhn] violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor." *See Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020). He must also plead facts which would "satisfy 'the elements of the common law tort of malicious prosecution.'" *Laskar v. Hurd*, 972 F.3d 1278, 1284 (11th Cir. 2020) (quoting *Williams*, 965 F.3d at 1165). These elements are "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010).

The Defendants concede that Johnson's criminal proceedings terminated in his favor. (Doc. 5 at 14). The first element of Johnson's claim, a violation of his right to be free from seizures pursuant to legal process, requires establishing two sub-elements: "(1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." *Williams*, 965 F.3d at 1165.

The Defendants argue that Johnson cannot establish either of these two sub-elements. The Court agrees. Establishing constitutional infirmity of the legal process requires showing either "that the officer who applied for the warrant should have known that his application failed to establish probable cause, or that an official . . . intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Id.* (citation omitted). Johnson's complaint implicates the latter half of this rule, simply

13

alleging that Officer Bruhn provided false information and lied under oath. Yet, "'[g]eneral attacks upon a defendant's credibility' are not enough to meet this burden." *Id.* (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)). "Nor are conclusory allegations and speculation." *Id.* at 1166.

Johnson does not plead sufficient facts to support his conclusory allegation that Officer Bruhn lied under oath. *See Woodring v. Hart*, WL 2238056, at *3 (M.D. Fla. May 12, 2015) (dismissing malicious prosecution claim based on officer's perjurious statement because the plaintiff made no allegations "bearing on the officer's subjective belief about the veracity of the assertions made in his affidavit, such as a possible motive for the officer to lie."). Johnson's complaint contains no facts discussing how Officer Bruhn might have lied, nor does it offer support for his speculation that Officer Bruhn "executed a false and defamatory sworn deposition." (Doc. 1-1 at 4). Furthermore, it fails to state what false information the allegedly defective warrant contained. Unfortunately, Johnson's response brief is of no further help. When the Defendants point out Johnson's conclusory allegations (doc. 5 at 16), Johnson dodges the issue, again accusing Officer Bruhn's "account of the events" as "contrary to the truth" without citing to factual allegations in his complaint to support such. (Doc. 13 at 2).

The Court concludes that Johnson fails to allege sufficient facts to plausibly show that Officer Bruhn provided false information leading to Johnson's arrest. Thus, Johnson fails to sufficiently allege that the legal process justifying his seizure was constitutionally infirm, which in turn means that he has not plausibly alleged a federal malicious prosecution claim.

Moreover, regardless of the other deficiencies present in Johnson's complaint, he does not satisfy all the common law elements of malicious prosecution. Namely, Johnson fails to sufficiently allege a lack of probable cause, the existence of which "defeats a §1983 malicious prosecution claim." *Grider*, 618 F.3d at 1256.[9] Probable cause looks at the "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id.* at 1257. To receive qualified immunity, actual probable cause is not necessary, only 'arguable probable cause' is, which exists when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Id.*

When analyzing a claim for malicious prosecution, Courts must look at whether the "seizure at issue lacked probable cause by considering what the affidavit charging the plaintiff stated." *Williams*, 965 F.3d at 1163. In other words, Officer Bruhn will be held "liable only after concluding that [his] warrant affidavit lacked probable cause." *Id.*

Here, Johnson does not allege sufficient facts about Officer Bruhn's affidavit to plausibly show that it lacked probable cause or that Officer Bruhn knew or should have known it lacked probable cause. In fact, Johnson alleges not one fact concerning an affidavit by Officer Bruhn at all. Rather, in his statement of facts, Johnson describes events that occurred before his arrest, then turns to his claims where he references an allegedly defective affidavit. Conclusory allegations that Officer Bruhn's words were "false and

---

[9] "When malicious prosecution is brought as a federal constitutional tort, the outcome of the case does not hinge on state law, but federal law, and does not differ depending on the tort law of a particular state." *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003).

15

defamatory" are not enough to give rise to a claim for malicious prosecution. (Doc. 1-1 at 4). Johnson alleges that Chief Williams showed up to his house with a "warrant for obstruction." (*Id.* at 3). However, Johnson does not point to facts supporting a lack of probable cause, fabricated evidence or information, or actions by Officer Bruhn indicating that he lied. Therefore, the Defendants (and the Court) are once again left with nothing to analyze. Complaints as contradictory and bare as Johnson's do not state viable claims upon which relief can be granted.

Accordingly, the malicious prosecution claims against Officer Bruhn in Count One and Count Two are due to be dismissed without prejudice.

### 2. *The Town*

Johnson alleges that the Town "accepted and approved the actions of Bruhn" when the officer violated his rights. (Doc. 1-1 at 4). The Defendants move for the dismissal of the claim against the Town, arguing that the complaint's allegations are insufficient to establish municipal liability. In response, Johnson cites to *City of Canton v. Harris*, 489 U.S. 378 (1989) and argues that the inadequacy of training can serve as a basis for municipal liability.

A municipality cannot be held liable under § 1983 on a *respondeat superior* theory; rather, it "can be found liable . . . only where the municipality *itself* causes the constitutional violation at issue." *City of Canton*, 489 U.S. at 385 (emphasis in original). Moreover, a municipality's failure to adequately train its officials can give rise to a viable § 1983 action "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. "A pattern of similar violations by

16

untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). When the case involves "isolated acts by government officials," the municipality "may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

Johnson fails to allege sufficient facts to support either theory. He does not allege a pattern of similar violations by untrained employees, *see Connick*, 563 U.S. at 62, nor does he allege facts sufficient to plausibly show that the Town is actually responsible for the alleged acts giving rise to the violation of his constitutional rights, *see Praprotnik*, 485 U.S. at 123. Therefore, the complaint does not state a plausible claim for municipal liability under § 1983. Accordingly, Johnson's § 1983 claim against the Town in Count One is due to be dismissed without prejudice.

### E. State Law Claims

Johnson's complaint brings at least twelve additional counts under Alabama state law. The claims are as follows: malicious prosecution; false imprisonment; abuse of process; negligence; slander per se; libel; negligent hiring, training, and supervision; assault; battery; intentional infliction of emotional distress; wanton supervision and

retention; outrage; and invasion of privacy.[10] The Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367. The Court may, however, decline to exercise such jurisdiction in four situations if: (1) the state claim raises a novel or complex issue of state law; (2) the state claim substantially predominates over the federal claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

As discussed above, Johnson's federal claims have been dismissed. His state law claims, which lack an independent jurisdictional basis, are all that remain. Accordingly, the Court will decline to exercise supplemental jurisdiction over Johnson's state law claims, and they are due to be dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3).

## VI. CONCLUSION

For the reasons stated, it is

ORDERED that the motion to dismiss (doc. 4) is GRANTED as to Johnson's federal law claims. The Court declines to exercise jurisdiction over Johnson's remaining state law claims, and those claims are DISMISSED without prejudice.

A separate final judgment will be entered.

---

[10] Count Eight of Johnson's complaint brings a claim against the Town for negligent hiring, training, and supervision. In his response brief, like Count Two, Johnson cites to federal caselaw, seemingly indicating that he believes he is bringing a federal law claim under § 1983. Here, the Court does not give him the benefit of the doubt. The two block quotes he cites opine on negligent hiring, training, and retention as recognized by Alabama *state* courts. In other words, unlike Count Two's representations in which Johnson cites to federal cases analyzing a federal claim, Count Eight's briefing cites to federal cases analyzing a state claim. Accordingly, Count Eight is construed as bringing a state law claim.

DONE this 26th day of March, 2024.

                                              /s/ Emily C. Marks
                                   EMILY C. MARKS
                                   CHIEF UNITED STATES DISTRICT JUDGE